Sean M. Morris
Jesse Kodadek
Martin Rogers
Clare Kealey
WORDEN THANE P.C.
321 W. Broadway, Suite 300
Missoula, MT 59802
(406) 721-3400
smorris@wordenthane.com
jkodadek@wordenthane.com
mrogers@wordenthane.com
ckealey@wordenthane.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SUSAN DOW, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, a Liberty Mutual Company; LIBERTY MUTUAL INSURANCE COMPANY; and LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>*Defendants*. | 1:20-cv-00031-SPW<br><br>SECOND AMENDED CLASS ACTION COMPLAINT |

## INTRODUCTION

1. Susan Dow, on behalf of herself and all others similarly situated, brings this

    action because Defendants Safeco Insurance Company of America, Liberty

Mutual Insurance Company, and Liberty Mutual Fire Insurance Company have systematically withheld amounts owed to their insureds under the loss settlement provisions of residential property insurance policies across Montana.

2. Every time the Defendants have wrongfully withheld amounts owed under issued policies, they have breached the insurance contract with their insureds and violated the Montana Unfair Trade Practices Act.

3. More specifically, Defendants have withheld general contractor overhead and profit on portions of repairs and replacements—typically roof-related—even though general contractor overhead and profit is universally held to be a legitimate and required component of the cost to repair or replace covered property as defined by the Defendants' own policies, and even though the Defendants generally pay overhead and profit for other trades.

4. A general contractor's overhead and profit is simply the fee paid for the services of a general contractor.

5. A general contractor's overhead and profit is owed by an insurance company to an insured when the services of a general contractor are reasonably necessary to repair or replace a covered property loss, and it is something insureds specifically pay for as part of their premium.

6. Here, the Defendants generally recognize that insureds who have repairs that will likely require the services of a general contractor are entitled to that general contractor overhead and profit and Defendants usually include that payment—except that Defendants systematically withhold general contractor overhead and profit for line items related to roof repair and replacement.

7. This matter is suitable for class certification under Federal Rule of Civil Procedure 23(b)(3) because it satisfies the elements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), and because the individual class members' compensatory damages are calculable to a sum certain based on the Defendants' existing claims files.

## PARTIES

8. Plaintiff Susan Dow owned property in Billings, Montana commonly known as 3530 Glenfinnan Road.

9. At all times relevant to this action, Dow had a homeowner policy through Safeco.

10. Safeco and Liberty Mutual Fire Insurance Company are both wholly owned subsidiaries of Liberty Mutual Insurance Company.

11. Safeco and Liberty Mutual Fire Insurance Company are foreign insurance companies that issue residential property insurance policies in Montana.

**THE RELATIONSHIP BETWEEN THE LIBERTY MUTUAL DEFENDANTS AND SAFECO**

12. Liberty Mutual Insurance Company is the world's fifth largest property and casualty insurer.

13. Since 2008, Safeco has been a wholly owned subsidiary of Liberty Mutual Insurance Company and its associated entities, and advertises itself as "part of Liberty Mutual Insurance" and "a Liberty Mutual Insurance Company."[1]

14. Liberty Mutual Fire Insurance Company is also a wholly owned subsidiary of Liberty Mutual Insurance Company.

15. Safeco's policies are titled "Safeco Insurance, A Liberty Mutual Company."

16. Safeco and Liberty Mutual Fire Insurance Company residential property policies issued in Montana identify the same mailing address for both entities—P.O. Box 515097, in Los Angeles.

17. Safeco's website, https://www.safeco.com/, is owned by Liberty Mutual: "© 2019 Liberty Mutual Insurance, 175 Berkeley Street, Boston, MA 02116."

18. Various subpages on safeco.com, like https://www.safeco.com/customer-resources/customer-support/contact-us, contain direct links to libertymutual.com domains, such as the invitation to "Send us your questions, compliments, or complaints," which links to

---

[1] https://www.safeco.com/about/history. All websites listed in this Complaint were last visited February 3, 2020.

https://www.libertymutualgroup.com/about-lm/our-company/contact-us-form. On the same page, the "Media Contact" links to Glenn Greenberg's email address, a Liberty Mutual email address: glenn.greenburg@libertymutual.com.

19. The Liberty Mutual entities and Safeco publish documents regarding property claims handling that are substantively identical. For example, compare https://www.libertymutual.com/insurance-content/documents/claims/liberty-mutual-property-claim-estimate.pdf with https://www.safeco.com/insurance-content/documents/claims/safeco-understanding-your-property-claim-estimate.pdf. (Attached as **Exhibits 1** and **2**).

20. Safeco and the Liberty Mutual entities share employee services in Montana and on Montana claims. For example, they use at least some of the same claims handlers and estimators. Indeed, on Dow's latest estimated cost of prepares as prepared by Safeco, the "estimator" is listed as Brad.Strickland@LibertyMutual.com. A copy of that estimate is attached as **Exhibit 3**.

21. Upon information and belief, Safeco and Liberty Mutual Fire Insurance Company treat their Montana-based insureds substantively identically, and handle property loss claims the same way.

22. Upon information and belief, Liberty Mutual affirmatively directs Safeco and Liberty Mutual Fire Insurance Company to handle claims in the manner that Dow alleges is unlawful. Alternatively, on information and belief, Safeco and the Liberty Mutual entities have an agreement to handle claims in the same unlawful manner.

23. There is a direct juridical link between Safeco and the Liberty Mutual Defendants.

24. The Defendants' conduct is therefore part of an agreement, scheme, or conspiracy designed to programmatically undercompensate insureds who incur covered property losses, and Dow and others have been damaged as a result of that agreement or scheme.

### THE DEFENDANTS' POLICY LANGUAGE AND CLAIMS HANDLING

25. Dow's homeowner policy includes two overall types of property loss settlement provisions: replacement cost and actual cash value.

26. Upon information and belief, these are standard-form provisions applicable to many—or perhaps all—of the property insurance the Defendants sell in Montana.

27. Replacement cost value ("RCV")—in the context of "loss or damage to buildings"—is defined as "the cost, at the time of loss, to repair or replace

the damaged property with new materials of like kind and quality, without deduction for appreciation."

28. Actual cash value ("ACV") is defined in three ways. First, where the damage is "economically repairable," it is defined as "the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence."

29. Second, "when damage to property is not economically repairable or loss prevents repair," it is defined as "the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market."

30. Third, "otherwise" it means "the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence."

31. The concepts of RCV and ACV are closely related, because ACV is merely the RCV less depreciation.

32. In practical terms, for all losses exceeding an insured's deductible, an insured may make an immediate claim for the ACV of the loss, regardless of whether or not they ever complete the repairs. If they complete the repairs, however, they are entitled to the difference between the ACV and the RCV.

33. No matter if Defendants' insureds elect to collect for only actual cash value and then move on, or choose to repair or replace the damaged property, the Defendants prepare a loss estimate statement that includes line items for 10% general contractor overhead and 10% general contractor profit for most trades, but regularly omit that same amount for nearly all line items related to roof repair or replacement.

34. Thus, based on the loss estimates prepared by the Defendants, the Defendants refuse to calculate or include general contractor overhead and profit for roof-related line items when making either ACV or RCV payments to their insureds, even when they include general contractor overhead and profit for all other covered structural[2] losses.

## Dow's Loss and the Defendants' Claims Handling

35. At all relevant times, Dow's property was insured by Safeco through a standard-form homeowner policy, number OM2676703.

36. In August of 2018, a storm damaged the dwelling on Dow's property, which was covered by the policy.

37. Safeco accepted liability and began adjusting the claim under the policy's loss settlement provisions.

---

[2] No general contractor overhead and profit is owed for damaged or destroyed personal property, so where personal property is shown on the insurers' scopes, those line items will not have overhead and profit included.

38. Safeco prepared a series of loss estimates for the property, which ultimately resulted in an estimated RCV of $105,352, and an ACV of $90,714.

39. These numbers included $12,788 for overhead and profit—which constitutes an industry-standard 20%—10% for overhead and 10% for profit.

40. The only line items that did not include payment of general contractor overhead and profit were for the roof.

41. The combined 20% overhead and profit for general contractors is a nationwide industry standard, and it is the same amount the Defendants pay for general contractor overhead and profit for most trades. It is also the amount the Defendants pay their insureds for general contractor overhead and profit on those line items where they actually pay it.

42. Safeco thereafter refused to pay Dow the general contractor overhead and profit for the roof, even though she had hired and paid a general contractor to oversee and coordinate all of the repairs—including the roof—and even though Safeco and Liberty Mutual Fire Insurance Company both explain to their insureds that "Overhead and Profit is included in a repair estimate when the repair or replacement may involve a general contractor." See **Exhibits 1** and **2** at n. 1.

## COUNT 1—BREACH OF CONTRACT

43. Dow incorporates the preceding allegations in this part.

44. An insurance policy creates a contract between the insurance company and the insured.

45. The amounts owed to insureds to compensate insureds under Defendants' policies necessarily include a general contractor's reasonable overhead and profit when a contractor's services are necessary to complete the agreed-upon scope of work.

46. Once the Defendants calculated the estimated loss and began making actual cash value payments that recognized the likelihood that Dow would need a general contractor, Defendants were obligated to pay general contractor overhead and profit on all line items, including those related to the roof.

47. By failing to pay those amounts when they were due, the Defendants breached the insurance contract.

48. Once Dow completed the work on her property, the Defendants had an obligation to pay Dow the additional portions of the 20% general contractor overhead and profit that had been held back.

49. By failing to pay those amounts when they were due, the Defendants again breached the contract.

50. As a result of the Defendants' breaches of contract, Dow and all others similarly situated have sustained damages in an amount to be determined at trial.

## COUNT 2—VIOLATIONS OF THE UTPA

51. Dow incorporates the preceding allegations in this part.

52. The Montana Unfair Trade Practices Act ("UTPA") regulates the practices of insurers in this state and prohibits insurers from engaging in unfair methods of competition or unfair or deceptive acts and practices in the business of insurance.

53. By systematically refusing to pay its insureds the reasonable value of general contractor overhead and profit, the Defendants have violated the UTPA under § 33–18–201(1), (4), (5), (6), and (13).

54. As a result of the Defendants' violations of the UTPA, Dow and all others similarly situated have sustained damages in an amount to be determined at trial.

55. The Defendants' actions rise to the level of actual fraud and actual malice for punitive damages purposes.

56. The Defendants acted with malice because they knew about facts or disregarded facts that created a high probability of injury to their insureds and went on to act in conscious disregard, intentional disregard, or indifference to that injury.

57. The Defendants acted with actual fraud because the insurance contract does not inform an insured that the Defendants may attempt to withhold part of

the actual cost of repairs and replacement, and the Defendants therefore misrepresented facts and concealed from its insureds their entitlement to those amounts.

## COUNT 3—CLASS CERTIFICATION

58. Dow incorporates the preceding allegations in this part.

59. Dow requests that she be designated as class representative and lead plaintiff in a class action certified under Federal Rule of Civil Procedure 23. Dow and the members of the class—those insured by the Defendants in Montana and who have made property loss claims where those claims were reasonably likely to require the services of a general contractor—have these characteristics in common:

    a. Dow and the class all have similar loss settlement provisions in their contracts with the Defendants.

    b. Dow and the class have all suffered the same harm from the Defendants' standard practice of refusing to pay general contractor overhead and profit for roof repairs and replacements when making the actual cash value payment and then again after the repairs are complete, when the replacement cost value payment is due.

    c. Dow and the class all seek the same relief—monetary damages for the Defendants' breach of the insurance contract and UTPA violations.

60. The proposed class action meets the requirements of Federal Rule of Civil Procedure 23(a) because:

    a. An action representing the interests of all potential class members would involve so many individuals that joinder of all of them would be impracticable, if not impossible. On information and belief, the number of class members will be in the hundreds, if not thousands.

    b. The legality and propriety of the Defendants' actions involves questions of law and fact common to all class members.

    c. Dow's claims typify the class claims, and the questions posed by this action concern the same issues for Dow and for each class member.

    d. Dow will fairly and adequately represent and protect the interests of the class. Resolution in favor of Dow will fairly and adequately inure to the benefit of the entire class.

    e. Dow's attorneys are skilled in the type of issues presented, and have litigated complex class actions and insurance coverage issues, including other class actions related to general contractor overhead and profit.

    f. Some of the class claims may be too small individually to justify the costs of suit unless they are certified as a class. For example, the RCV

of Dow's roof repairs was $28,623, which means her contract damages are approximately $5,724.

61. A class action is maintainable under the requirements of Federal Rule of Civil Procedure 23(b)(3) because:

   a. Prosecution of separate actions creates the danger of inconsistent or varying adjudication if all class members' rights were adjudicated in separate actions spread across the state. That would create the real risk of inconsistent results.

   b. Common questions of law and fact predominate over any question affecting individual members, and so a class action is a superior method for the fair and efficient adjudication of the controversy.

   c. The remedy requested is not onerous or impractical, and the precise amounts of compensatory damages owed to the class members are calculable to a sum certain based on information already included in the Defendants' own records, because:

      i. The Defendants' adjusters have already prepared claims estimates of the repair costs for each class members' covered losses;

  ii. Dow accepts the Defendants' adjusters' estimates about the extent of each repair cost—both actual cash value and replacement cost—for each class member; and

  iii. Dow seeks to recover on behalf of the class the general contractor overhead and profit, which the Defendants improperly excluded from its actual cash value payment and, where applicable, from its later payment of replacement cost. The amount due to each class member can thus be determined with relative ease through a forensic accounting of the Defendants' own claims data.

62. Dow therefore requests that the Court certify the class and authorize notice under Rule 23. Dow also requests that the Defendants be directed to provide notice to all qualifying class members, since the Defendants have all of the information needed to contact the class members.

63. The class members include every home, farm, and ranch owner with dwelling and related structure coverage who have made a property damage claim where the Defendants have refused to pay general contractor overhead and profit for roof repairs and replacements or other specific trades for actual cash value claims where the services of a general contractor were reasonably necessary.

64. The class also includes insureds who made replacement cost claims following completion of repairs or replacements where the Defendants refused to include general contractor overhead and profit in some but not all line items, and who were again denied general contractor overhead and profit on the withheld amounts.

## PRAYER FOR RELIEF

Dow and the class she seeks to represent request the following relief:

A. For a judgment that the Defendants' refusal to pay general contractor overhead and profit on all portions of property loss claims where a general contractor's services are reasonably likely breaches the insurance contract between the Defendants and their insureds;

B. For judgment that the same claims handling practices violate the UTPA;

C. For an judgment against Defendants for breach of contract and for violating the UTPA, plus pre- and post-judgment interest at the statutory rates;

D. For punitive damages;

E. For an order certifying the class under Federal Rule of Civil Procedure 23 and appointing Dow as the class representative and lead plaintiff;

F. For an award of costs and attorney fees to be calculated and paid separately from the common fund, consistent with the fee agreement between Dow and the class attorneys;

G. Alternatively, for an order directing that class attorney fees, costs, and associated expenses be paid out of the common fund resulting from any successful recovery, consistent with the fee agreement between Dow and the class attorneys;

H. For an order directing that the class representative be awarded a reasonable incentive award from the common fund; and

I. For any other appropriate relief.

### JURY TRIAL DEMAND

Dow demands a trial by jury for all issues so triable.

April 22, 2020.

        WORDEN THANE P.C.
        *Attorneys for Plaintiff*

        /s/ Jesse Kodadek
        Jesse Kodadek